UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | * * * | CIVIL ACTION FILE NO. _____ |
| Plaintiff, | * * | |
| vs. | * * | |
| ALMARK HOLDINGS, INC., | * * | |
| Defendant. | * * * | |

## COMPLAINT FOR DECLARATORY JUDGEMENT

COMES NOW, Westfield Insurance Company ("Westfield"), and pursuant to 28 U.S.C. §2201(a) and Fed. R. Civ. P. 57, files this Complaint for Declaratory Judgement against Almark Holdings, Inc. ("Almark") and states as follows:

## INTRODUCTION

1.

This is an action for declaratory judgment arising out of an actual and existing controversy of a justiciable nature concerning the parties' rights and duties pursuant to the Westfield insurance policies issued to Almark Holdings, Inc., in connection with claims asserted against Almark by certain customers

Mabry & McClelland, LLP • Suite 1000, 2200 Century Parkway, N.E. • Atlanta, GA 30345 • 404-325-4800

following the voluntary recall of Egg products by Almark.  A copy of the Almark Notices of Recall dated December 20, 2019 and December 21, 2019 are attached hereto as Exhibit "A".

2.

Westfield seeks a declaration as to the existence of any duty to defend and/or indemnify Almark under and pursuant to Westfield's insurance policies issued to Almark providing coverage for the policy periods of December 15, 2018 through December 15, 2020 (collectively "the Westfield Policies").  A true and correct copy of the Westfield Policies are attached hereto as Exhibit "B".

3.

Almark has requested insurance coverage from Westfield under the Westfield Policies for the claims asserted by Almark's customers, including Cheesewich and Bakkavor, against Almark for the costs of disposal and destruction of Almark's eggs and/or customer's food products incorporating Almark's eggs (the "Third-Party Recall Expense Claims").

4.

Westfield has agreed to defend Almark against claims of bodily injury in connection with Almark's eggs, pursuant to a full reservation of rights, and

the scope of this Declaratory Action is limited to the Third-Party Recall Expense Claims by customers and associated Recall Expenses incurred by Almark as a result of customers asserting property damage claims for the disposal and destruction of Almark's eggs and/or food products incorporating Almark's eggs.

5.

The Recall Exclusion and other provisions in the Westfield Policies eliminate any coverage for such Third-Party Recall Expense Claims incurred by Almark resulting from the Voluntary Recall by Almark.

6.

Westfield disputes that it owes any insurance coverage for the Third-Party Recall Expense Claims under the Westfield Policies and applicable law and seeks declaratory relief as to these obligations.

**PARTIES, JURISDICTION AND VENUE**

7.

Westfield Insurance Company (again, "Westfield") is an Ohio Corporation organized and existing under the laws of the state of Ohio, with its principal place of business located in Westfield Center, Ohio. For the purpose of diversity jurisdiction, Westfield is a citizen of Ohio.

8.

Almark Holdings, Inc. (again, "Almark") is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 2118 Centennial Drive, Gainesville, Georgia, 30504.  For the purpose of diversity jurisdiction, Almark is a citizen of Georgia.

9.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Westfield and Almark and the amount in controversy, exclusive of interest and costs, exceeds $75,000

10.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and Local Rule 3.1(B)(1)(a) because the Defendant's principal place of business is located in this District.

## FACTS AND UNDERLYING CLAIMS

11.

On December 18, 2019, the U.S. Food & Drug Administration ("FDA") notified Almark that its "Hard-Boiled and Peeled Eggs in pails produced at its

Mabry & McClelland, LLP ● Suite 1000, 2200 Century Parkway, N.E. ● Atlanta, GA 30345 ● 404-325-4800

Gainesville, Georgia facility may be associated with a *Listeria monocytogenes* food-born illness investigation, which remains ongoing."

12.

On December 20, 2019, Almark's Company Announcement states that it is "voluntarily recalling Hard-Boiled and Peeled Eggs in white plastic pails with white plastic lids due to the potential to be contaminated with *Listeria monocytogenes*." "Out of an abundance of caution, Almark Foods is voluntarily recalling all Hard-Boiled and Peeled Eggs in Pails produced at its Gainesville, Georgia facility that remain within expiry" and "has suspended production of the recalled egg products" to further investigate the issue.

13.

On December 23, 2019, Almark's Company Announcement states that it is "expanding its voluntary recall first announced on December 20, 2019, to include all hard-boiled eggs manufactured at the firm's Gainesville, Georgia facility, including all retail, pillow pack, pouch pack, frozen diced, and protein kit products, due to potential contamination with *Listeria monocytogenes*."

14.

A customer of Almark, named Cheesewich, has presented a third-party property damage claim against Almark, totaling $35,214.21, for recall expenses incurred from products being disposed or thrown away as a preventative measure in response to Almark's Voluntary Recall. A copy of the Cheesewich claim summary document from Almark's attorney is attached hereto as Exhibit "C".

15.

Another customer of Almark, named Bakkavor, has presented a third-party property damage claim against Almark, totaling $319,040.49, for recall expenses incurred from products being disposed or thrown away as a preventative measure in response to Almark's Voluntary Recall. A copy of the Bakkavor claim summary document from Almark's attorney is attached hereto as Exhibit "D".

16.

Almark's eggs themselves are fine, but Almark was taking extreme measures to eliminate any potential risks to its customers or third-party consumers of its egg products, by voluntarily recalling its egg products. A

copy of Almark representative's email to Bakkavor regarding Almark Recall Information is attached hereto as Exhibit "E".

17.

At the time of its voluntary recall, Almark had in full force and effect a Lloyd's of London Syndicate 4000 Recall Advantage Product Contamination Insurance Policy Number CPP1877162 (the "Lloyd's Recall Policy") providing $2,000,000 in coverage for Recall Costs, Approved Consultants, Increased Costs of Working, Rehabilitation Expense, Incident Response Costs, Loss of Gross Income or Customer Loss of Profits, and Third-Party Recall Liability.  Almark has received the full amount of its $2,000,000 coverage under the Lloyd's Recall Policy, in accordance with Almark's "Final Proof of Loss and Sworn Statement" attached hereto as Exhibit "F".

18.

Also at the time of its voluntary recall, Almark had in full force and effect a Westfield "Limited Product Withdrawal Expense Endorsement" providing $200,000 in coverage for expenses incurred because of a covered product withdrawal, which has been paid by Westfield to Almark.  The Limited Product Withdrawal Expense Endorsement states that "THIS

ENDORSEMENT DOES NOT PROVIDE ANY LIABILITY COVERAGE OR COVERAGE FOR THE COST OR EXPENSE OF DEFENDING ANY CLAIM OR SUIT."  See Westfield Policies Exhibit "B", Form CG04360413, pp. 1-4, attached hereto as Exhibit "G".

19.

Presently, Almark seeks to recover additional amounts from Westfield under the Commercial General Liability ("CGL") portion of the Westfield Policies, for the Third-Party Recall Expense Claims by customers, including Cheesewich and Bakkavor, and associated Recall Expenses incurred by Almark as a result of customers asserting property damage claims for the disposal and destruction of Almark's eggs and/or food products incorporating Almark's eggs.

20.

The Recall Exclusion and other provisions in the CGL portion of the Westfield Policies eliminate any coverage for such Third-Party Recall Expense Claims resulting from the Voluntary Recall by Almark.

21.

Westfield disputes that it owes any insurance coverage for the Third-Party Recall Expense Claims under the Westfield Policies, and Westfield seeks declaratory relief as to these obligations.

## THE WESTFIELD POLICIES AND DECLARATORY ACTION

22.

Westfield issued Commercial Insurance Coverage Policy Number CAG 3186625 to the named insured, Almark Holdings, Inc., initially in 2014 which includes the policy periods from December 15, 2018 through December 15, 2019, and December 15, 2019 through December 15, 2020 (collectively "the Westfield Policies").

23.

The Westfield Policies include "Commercial General Liability Coverage Form" number CG00010413 with an each occurrence limit of $1,000,000, and a general aggregate and products/completed operations aggregate limit of $2,000,000, and the Policies include an umbrella limit in the amount of $10,000,000 each occurrence and general aggregate.

24.

The Westfield Policies include the following relevant exclusion:

**2. Exclusions**

This insurance does not apply to:

. . .

**n.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by

you or others for the loss of use, withdrawal, recall,

inspection, repair, replacement, adjustment, removal or

disposal of:

**(1)**   "Your product;"

**(2)**   "Your work;" or

**(3)**   "Impaired property;"

if such product, work, or property is withdrawn or recalled

from the market or from use by any person or organization

because of a known or suspected defect, deficiency,

inadequacy or dangerous condition in it.

See Westfield Policies Exhibit "B", Form CG00010413, p. 5 of 16,

attached hereto as Exhibit "H".

25.

The Westfield Policies include the following relevant definition:

**21.**   "Your product":

    **a.**   Means:

    **(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**  You;

        **(b)**  Others trading under your name; or

        **(c)**  A person or organization whose business or assets you have acquired; and

    **(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**   Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

Mabry & McClelland, LLP ● Suite 1000, 2200 Century Parkway, N.E. ● Atlanta, GA 30345 ● 404-325-4800

**(2)** The providing of or failure to provide warnings or

instructions.

See Westfield Policies Exhibit "B", Form CG00010413, p. 16 of 16,

attached hereto as Exhibit "H".

## COUNT I –ACTION FOR DECLARATORY JUDGMENT ON THE CHEESEWICH THIRD-PARTY RECALL EXPENSE CLAIM

26.

Westfield re-alleges and incorporates by reference Paragraphs 1

through 25 as if fully set forth herein.

27.

Almark's customer Cheesewich has presented a third-party property

damage claim against Almark, totaling $35,214.21, for recall expenses

incurred from products being disposed or thrown away as a preventative

measure in response to Almark's Voluntary Recall.  See Exhibit "C".

28.

In Georgia and other jurisdictions, Exclusion "n. Recall of Products,

Work, or Impaired Property" (the "Recall Exclusion") applies to eliminate

coverage for "damages claimed for any loss, cost or expense incurred by you

or others for the loss of use, withdrawal, recall, inspection, repair,

replacement, adjustment, removal or disposal of your product . . ."  See Exhibit "H".

29.

This provision is known as the "sistership" exclusion, a term derived from an occurrence in the aircraft industry in which one plane crashed and its "sisterships" were thereafter grounded and recalled by the manufacturer in order to correct the common defect that had caused the crash.  See, Hathaway Development Company, Inc. v. American Empire Surplus Lines Insurance Company, 301 Ga. App. 65, 70, 686 S.E.2d 855, 861 (2009), cert. granted (2010).

30.

The Recall Exclusion is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in situations in which a danger is to be apprehended.

31.

The Recall of egg products by Almark was a general one, extending to all of the products that originated from Almark's Gainesville, Georgia facility, without regard to whether they were actually contaminated or not.

Mabry & McClelland, LLP • Suite 1000, 2200 Century Parkway, N.E. • Atlanta, GA 30345 • 404-325-4800

32.

The Cheesewich claim derives from recall expenses incurred when food products were disposed or thrown away as a preventative measure in response to Almark's Voluntary Recall.

33.

Here, Almark recalled all of the identified egg products, so the Recall Exclusion applies to eliminate coverage under the Westfield Policies.

34.

Almark contemplated and understood that the Recall Exclusion applies to eliminate coverage under the Westfield Policies for Third-Party Recall Liability, as Almark purchased a separate insurance policy from Lloyd's (the Lloyd's Recall Policy), which provided $2,000,000 coverage including Third-Party Recall Liability, and Almark has received the full amount of its $2,000,000 coverage under the Lloyd's Recall Policy.
See Exhibit "F".

35.

Almark contemplated and understood that the Recall Exclusion applies to eliminate coverage under the Westfield Policies for Third-Party Recall Liability, as Almark obtained from Westfield a "Limited Product Withdrawal

Mabry & McClelland, LLP • Suite 1000, 2200 Century Parkway, N.E. • Atlanta, GA 30345 • 404-325-4800

Expense Endorsement" which provided $200,000 in coverage for expenses incurred because of a covered product withdrawal, that has been paid by Westfield to Almark, and which states that this Endorsement does not provide any liability coverage.  See Exhibit "G".

36.

A justiciable controversy exists between the Plaintiff and the Defendant involving the rights and liabilities of the parties under the insurance policies issued by the Plaintiff to Defendant.

37.

Under 28 U.S.C. § 2201(a), Plaintiff seeks a judicial declaration of the parties' respective rights and duties under the Westfield Policies.

38.

Westfield does not owe a duty to defend or indemnify Almark for the Cheesewich Third-Party Recall Expense Claims and associated Recall Expenses incurred by Almark resulting from the Voluntary Recall by Almark, because the claims are subject to a clear and unambiguous exclusion, namely, the Recall Exclusion.

39.

The Cheesewich Third-Party Recall Expense Claims are clearly and unambiguously excluded under the Westfield Policies' terms, conditions and exclusions, and Westfield requests this Court enter a declaration providing that Westfield has no duty to defend or indemnify in regard to the Third-Party Recall Expense Claims against Almark.

## COUNT II –ACTION FOR DECLARATORY JUDGMENT ON THE BAKKAVOR THIRD-PARTY RECALL EXPENSE CLAIM

40.

Westfield re-alleges and incorporates by reference Paragraphs 1 through 39 as if fully set forth herein.

41.

Almark's customer Bakkavor has presented a third-party property damage claim against Almark, totaling $319,040.49, for recall expenses incurred from products being disposed or thrown away as a preventative measure in response to Almark's Voluntary Recall.  See Exhibit "D".

42.

In Georgia and other jurisdictions, Exclusion "n. Recall of Products, Work, or Impaired Property" (the "Recall Exclusion") applies to eliminate coverage for "damages claimed for any loss, cost or expense incurred by you

or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of your product . . ." See Exhibit "H".

43.

This provision is known as the "sistership" exclusion, a term derived from an occurrence in the aircraft industry in which one plane crashed and its "sisterships" were thereafter grounded and recalled by the manufacturer in order to correct the common defect that had caused the crash. See, Hathaway Development Company, Inc. v. American Empire Surplus Lines Insurance Company, 301 Ga. App. 65, 70, 686 S.E.2d 855, 861 (2009), cert. granted (2010).

44.

The Recall Exclusion is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in situations in which a danger is to be apprehended.

45.

The Recall of egg products by Almark was a general one, extending to all of the products that originated from Almark's Gainesville, Georgia facility, without regard to whether they were actually contaminated or not.

46.

The Bakkavor claim derives from recall expenses incurred when food products were disposed or thrown away as a preventative measure in response to Almark's Voluntary Recall.

47.

Here, Almark recalled all of the identified egg products, so the Recall Exclusion applies to eliminate coverage under the Westfield Policies.

48.

Almark contemplated and understood that the Recall Exclusion applies to eliminate coverage under the Westfield Policies for Third-Party Recall Liability, as Almark purchased a separate insurance policy from Lloyd's (the Lloyd's Recall Policy), which provided $2,000,000 coverage including Third-Party Recall Liability, and Almark has received the full amount of its $2,000,000 coverage under the Lloyd's Recall Policy.
See Exhibit "F".

49.

Almark contemplated and understood that the Recall Exclusion applies to eliminate coverage under the Westfield Policies for Third-Party Recall Liability, as Almark obtained from Westfield a "Limited Product Withdrawal

Expense Endorsement" which provided $200,000 in coverage for expenses incurred because of a covered product withdrawal that has been paid by Westfield to Almark, and which states that this Endorsement does not provide any liability coverage.  See Exhibit "G".

50.

A justiciable controversy exists between the Plaintiff and the Defendant involving the rights and liabilities of the parties under the insurance policies issued by the Plaintiff to Defendant.

51.

Under 28 U.S.C. § 2201(a), Plaintiff seeks a judicial declaration of the parties' respective rights and duties under the Westfield Policies.

52.

Westfield does not owe a duty to defend or indemnify Almark for the Bakkavor Third-Party Recall Expense Claims and associated Recall Expenses incurred by Almark resulting from the Voluntary Recall by Almark, because the claims are subject to a clear and unambiguous exclusion, namely, the Recall Exclusion.

53.

The Bakkavor Third-Party Recall Expense Claims are clearly and unambiguously excluded under the Westfield Policies' terms, conditions and exclusions, and Westfield requests this Court enter a declaration providing that Westfield has no duty to defend or indemnify in regard to the Third-Party Recall Expense Claims against Almark.

54.

Thus, there is no duty to defend or indemnify Almark for the Third-Party Recall Expense Claims under the Westfield Policies, and Westfield is entitled to declaratory relief.

WHEREFORE, Westfield respectfully requests the following declaratory relief:

1.     That process issue and Defendant be served with the instant Complaint as provided by law;

2.     That the Court declare the respective rights, obligations, and duties of Westfield and Defendant Almark with respect to the Third-Party Recall Expense Claims;

3.     That the Court issue an Order declaring that the Third-Party Recall Expense Claims are precluded from coverage by

Mabry & McClelland, LLP • Suite 1000, 2200 Century Parkway, N.E. • Atlanta, GA 30345 • 404-325-4800

operation of the Recall Exclusion contained in the Westfield Policies;

4. That the Court declare whether the Third-Party Recall Expense Claims are precluded from coverage by operation of certain terms, conditions, exclusions, and other language of the Westfield Policies;

5. That the Court issue an Order declaring that Westfield is not obligated to provide coverage for any future judgments and/or settlements decided or reached in the Cheesewich and/or Bakkavor Third-Party Recall Expense Claims; and

6. That the Court grant such other and further relief as is deemed justified by the evidence and applicable law.

Respectfully submitted this 8th day of March, 2021.

MABRY & McCLELLAND, LLP

/s/ Richard H. Hill, Jr.
Richard H. Hill, Jr., Esq.
Georgia Bar No. 354422
Attorney for Westfield Insurance Company

2200 Century Parkway, N.E.
Suite 1000
Atlanta, Georgia 30305
(404) 325-4800; (404) 325-0596; Fax
rhill@m-mlegal.com

## <u>CERTIFICATION OF TYPE AND FONT</u>

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel certifies that the foregoing document was prepared using Times New Roman, 14-point font, which complies with Local Rule 5.1B regarding typefaces and fonts.

SO CERTIFIED this 8th day of March, 2021.

MABRY & McCLELLAND, LLP

<u>/s/ Richard H. Hill, Jr.</u>
Richard H. Hill, Jr., Esq.
Georgia Bar No. 354422
Attorney for Plaintiff Westfield
Insurance Company

(404) 325-4800 - telephone
(404) 325-0596 - facsimile
rhill@m-mlegal.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | * * * | CIVIL ACTION FILE NO. |
| Plaintiff, | * * | _____ |
| vs. | * * | |
| ALMARK HOLDINGS, INC., | * * | |
| Defendant. | * * | |
| _____ | * | |

## **VERIFICATION**

PERSONALLY APPEARED BEFORE the undersigned attesting

officer, duly qualified to administer oaths, JAMES P. SALAMONE, who,

after being duly sworn, deposes and states under oath that he is employed by

the Plaintiff Westfield Insurance Company and that he has authority to

execute this Verification on behalf of Westfield Insurance Company.  The

undersigned has reviewed the foregoing Complaint for Declaratory

Judgment, and the facts and allegations contained therein are true and

correct to the best of the undersigned's knowledge.  In addition, Exhibit "B"

that is attached to the Complaint for Declaratory Judgment is an accurate,

complete, and genuine copy of the Commercial Insurance Coverage Policy

Number CAG 3186625, issued to Almark Holdings, Inc. providing

Mabry & McClelland, LLP • Suite 1000, 2200 Century Parkway, N.E. • Atlanta, GA 30345 • 404-325-4800

insurance coverage, subject to certain conditions and exclusions, for the

policy periods of December 15, 2018 through December 15, 2020

(collectively "the Westfield Policies").

This 8ʰ day of March, 2021.

JAMES P. SALAMONE

Sworn to and subscribed before me
this 8ᵗʰ day of ___March___, 2021.

NOTARY PUBLIC

My Commission Expires:



JOHN T. SCANLON, Atty. at Law
NOTARY PUBLIC - STATE OF OHIO
My Commission Has No Expiration Date
SEC 147.03 R.C.

-2-